GENESEE VALLEY MILK PRODUCTS CO. v. J. H. JONES CORPORA-
TION (two cases).

(Supreme Court, Appellate Division, Fourth Department.    March 8, 1911.)

FOOD (§ 26*)—ADULTERATION—CONDENSED MILK—SALES.

> Agricultural Law (Consol. Laws, c. 1) § 37, prohibiting the making, selling, or exchanging of condensed milk unless manufactured from unadulterated and wholesome milk from which the cream has not been removed, etc., will not prevent a manufacturer of condensed milk made from half skimmed and half whole milk, who sold the article as such, from recovering the price from one who bought with knowledge.
>
> [Ed. Note.—For other cases, see Food, Cent. Dig.. § 19; Dec. Dig. § 26.*]
>
> Spring and Williams, JJ., dissenting.

Appeal from Trial Term, Monroe County.

Two actions by the Genesee Valley Milk Products Company, one for the price of goods sold and delivered and the other on a note given for goods sold and delivered, against the J. H. Jones Corporation. From

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgments dismissing its complaints (124 N. Y. Supp. 1009), plaintiff appeals.   Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George A. Carnahan, for appellant.
Paul M. Pelletreau, for respondent.

McLENNAN, P. J.   These two cases, argued together and known as Nos. "1" and "2," present a very unusual situation.

Action No. 1 was commenced to recover the sum of $2,011.02, the value of goods sold and delivered by the plaintiff to the defendant. Action No. 2 was brought to recover on a promissory note for $855.25, which was given for goods sold and delivered by the plaintiff to the defendant.   The answer to each of such causes of action interposed by the defendant, and which has been held to be a good defense, is that the promise to pay for the goods delivered, and the note given for the purchase price of part of such goods, were all in violation of section 37 of the agricultural law.   In other words, that the goods sold and delivered to the defendant were of such character that it (the plaintiff) could not sell or deliver them and create any obligation as against the purchaser, the defendant, upon such sale and delivery.

There is no question of fact presented by this appeal.

The defendant knew and was specifically informed as to the contents of the product which it was purchasing from the plaintiff.   It knew that it was "half and half," which meant in the trade and was understood by everybody that it was to be made from one-half skimmed milk and one-half whole milk.   There is no pretense in this case that the defendant did not know exactly the character of the condensed milk which it was receiving from the plaintiff under its contract.   There was no fraud or mistake by either party.   In other words, the defendant, with full knowledge of all the facts, received exactly the product it contracted for, to wit, "half and half," meaning one-half skimmed milk and one-half whole milk.   Neither is there any pretense or suggestion that the defendant did not sell the product to its customers and receive in return all that it contracted for.

Regardless of the provisions of the agricultural law, to which attention has been called, we think it is not competent for a vendee to receive from his vendor certain property and thereafter sell such property at the market price, and then, in an action brought to recover the contract price, say, "I will not pay the vendor," especially when no damage has resulted to the vendee from such sale.

But in this case we think the Legislature was entirely without power to declare that skimmed milk should not be a part of condensed milk with certain proportions of whole milk.   There is no suggestion that there is anything unwholesome about skimmed milk, and, if it is sold as such, it seems to me no one ought to complain.

In the case at bar there is no suggestion that as between seller and buyer there was any misrepresentation or mistake.   The buyer knew exactly that the proportion of skimmed milk and whole milk which was put into the product was "half and half."   If the buyer sold such

product under a false label, of course it was within the condemnation of the statute.

The defendant in this case, it seems to me, had no excuse for not keeping its obligation to pay for the product which it received and which it in turn, according to the uncontradicted evidence, had sold to its customers at the market value.

It follows, therefore, that the judgments appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

In each action judgment reversed, and new trial ordered, with costs to appellant to abide event, upon questions of law and fact.

KRUSE, J.   I concur in the result reached by the Presiding Justice, but am of the opinion that, if the milk product was made and sold in violation of the agricultural law, no recovery can be had for the purchase price thereof.   I think, however, it was not so made or sold.   Section 37 of the agricultural law, which it is contended was violated, reads as follows:

"No condensed milk shall be made or offered or exposed for sale or exchange unless manufactured from pure, clean, healthy, fresh, unadulterated and wholesome milk from which the cream has not been removed either wholly or in part, or unless the proportion of milk solids shall be in quantity the equivalent of twelve per centum of milk solids in crude milk, and of which solids twenty-five per centum shall be fats.   No person shall manufacture, sell or offer for sale or exchange in hermetically sealed cans, any condensed milk unless put up in packages upon which shall be distinctly labeled or stamped the name of the person or corporation by whom made and the brand by which or under which it is made.   When condensed milk shall be sold from cans or packages not hermetically sealed, the vendor shall brand or label such cans or packages with the name of the manufacturer of the milk contained therein."

Condensed milk is a well-known milk product.   The statute prescribes that this product, "condensed milk," shall not be made, offered, or exposed for sale or exchange unless manufactured from milk of a prescribed quality and condition.   But, as it seems to me, the making and selling of a condensed mixture of whole and skimmed milk are not prohibited, if made and exposed for sale, not as "condensed milk," but for what it is, as was done in this case.

This statute should receive a reasonable, and not a strict, interpretation.   It certainly cannot be that the Legislature intended to prohibit absolutely the making of a condensed mixture of whole and skimmed milk.   Nor do I think the manufacture or sale of such an article as food is forbidden, if put on the market for what it actually is, and not as condensed milk.   Pure skimmed milk, either alone or mixed with whole milk, is not unwholesome, nor is it claimed to be.

The product was made by the plaintiff for the defendant precisely as the defendant ordered it to be made.   There is no claim of misbranding or deception in its manufacture or sale.

As regards the plaintiff, I think there was not a making or exposing for sale of condensed milk within the meaning of the agricultural law.   Whether the defendant so put the article on the market and sold it as to violate the provisions of the statute, we do not know.

If it did, that affords no good reason for closing the courts against the plaintiff, who did not, and prevent the plaintiff from recovering of the defendant the purchase price of an article made as defendant directed, sold for what it is, and not put on the market by plaintiff so as to mislead or deceive either the defendant or the public in buying or consuming it.

ROBSON, J., concurs with KRUSE, J.

SPRING, J. (dissenting). I do not assent to the conclusion reached by the majority of the court.

Section 30 of the agricultural law defines with much particularity the term "adulterated milk." Subdivision 7 is as follows:

"Milk from which any part of the cream has been removed."

Section 37 of that act is entitled "Regulations in regard to condensed milk," and relates to that subject exclusively. It provides:

"No condensed milk shall be made or offered or exposed for sale or exchange unless manufactured from pure, clean, healthy, fresh, unadulterated and wholesome milk from which the cream has not been removed either wholly or in part, or unless the proportion of milk solids shall be in quantity the equivalent of twelve per centum of milk solids in crude milk, and of which solids twenty-five per centum shall be fats."

The facts in this case, which are undisputed, show that the plaintiff, a Monroe county corporation, sold and delivered to the defendant, a corporation in the city of New York, during the year 1910, a large quantity of condensed milk which was shipped in cans from time to time as ordered. The evidence does not show whether any of these cans were labeled. The statements of account rendered by the plaintiff to the defendant appear in the appeal book, and, as a sample, they are in the following form: "39 Cans Cond. Milk ½ & ½, $3.75, $146.25." There is no controversy as to what the cans contained. The expression "half and half," as both parties knew, indicated that the contents were composed of one-half skimmed milk—that is, milk from which the cream was removed—and one-half pure milk. The expression "half and half" also had a well-understood meaning in the milk business, and it was the kind of milk which the defendant ordered. The defendant sold this product to its customers, and has been paid in part for the sales which it made.

It seems to me that the plaintiff in selling this product is within the express provisions of section 37 of the agricultural law. He "made" condensed milk, and sold it, which was not manufactured from "unadulterated" milk; or, in other words, "milk from which the cream has not been removed "either wholly or in part." As between the parties, of course, we may say the defendant should pay when it received what it ordered. If, however, the plaintiff has committed a misdemeanor by violating this statute, I take it he cannot recover. If a man purchase on credit a gallon of whisky or other article from one prohibited from selling it, no legal liability is created, although the purchaser sells and receives cash for the same product (Griffith v. Wells, 3 Denio, 226; Tiffany on Sales, § 77, p. 140 et seq.); and that principle holds good here.

The controlling principle in construing a statute of this kind is to ascertain the evil which the Legislature is seeking to prevent or eradicate. Condensed milk has become a product used extensively. It is contained in cans, and only an expert can discover the ingredients which may compose the preparation. The Legislature, in order to make certain that it should be composed solely of wholesome milk, fixed an arbitrary standard for this product. It pursued the same course in defining adulterated milk when it provided that, if it contained more than 88 per centum of water or fluids, it was within that term. If condensed milk should consist partly of skimmed milk, I assume that it would not be deleterious to public health. That is also true of milk if it contains 90 per centum of water, instead of the maximum percentage described in the statute. The point is that the Legislature was seeking to regulate the manufacture and sale of a product of universal consumption. In order to make effective any legislation upon the subject, it was necessary to prescribe definitions and arbitrarily, as we may say, fix standards, and, if they were transcended by the seller of milk, the statute was violated, and he was liable for the penalty imposed, or even for a misdemeanor, although no evil effects resulted or were likely to result. Inasmuch as condensed milk is so generally used and the public can be deceived so easily as to its component parts, the manufacturer and seller have been held to a very rigid rule, and that is that condensed milk must contain only unadulterated milk.

It has frequently been held that whether the manufacturer or seller intended to deceive is unimportant. People v. Bowen, 182 N. Y. 1, 6, 74 N. E. 489; People v. Kibler, 106 N. Y. 321, 12 N. E. 795; People v. Cipperly 101 N. Y. 634, 4 N. E. 107, reversing 37 Hun, 319, on dissenting opinion delivered below.

Nor do I think that the Legislature transgressed its authority in fixing the arbitrary standard which it did. The statute in its general features, especially pertaining to the watering of milk, has been frequently upheld. People v. Beaman, 102 App. Div. 151, 92 N. Y. Supp. 295; People v. Bowen, 182 N. Y. 1, 6, 74 N. E. 489, supra.

The troublesome question is the claim that it was not intended by the Legislature to make it a misdemeanor or to prohibit in any way the making of a preparation consisting of skimmed milk and milk and selling it, provided the purchaser is apprised of the exact parts of which the product is made. There is no prohibition in the statute against selling skimmed milk. On the contrary, the right to sell it seems to be recognized. It would follow that to sell skimmed milk condensed would not be a violation of the prohibition of the sale of condensed milk, as that term is defined in the statute. There is much force in this suggestion, but it seems to me that the statute has a broader purpose than this interpretation would give to it. The milk was sold in cans, apparently unlabeled by the defendant, in large quantities, and, of course, it was expected to be sold to numerous consumers and used by them. The chances are that the ultimate consumer would believe that the condensed milk which he was using was that which the statute has defined. It was the public health generally which

the Legislature had in mind, and to prevent the spurious product from being sold, not primarily to a milk company, but to the multitude who use it.

Again, it is to be borne in mind that the plaintiff designated this as condensed milk, which, as already stated, is defined by the statute, and then seeks to inform his purchaser that it is not condensed milk at all, but a preparation or combination of pure milk and adulterated milk in equal quantities. He might have added a substance to it in order to preserve it; or, if it could be retained in the combination, have added water to it, and still be exonerated if he only said in his statement of account that it is condensed milk but contains other ingredients than milk itself.

While there is no specific prohibition against the sale of skimmed milk, yet section 44 of the agricultural law apparently restricts its sale. That section, which is not applicable to the counties of New York and Kings, provides that the prohibitions against the sale of adulterated milk are not applicable to the sale of skimmed milk if sold for use in the county in which it is produced, or an adjoining county.

The reasonable inference would seem to be from this statute that a sale made not within the express provisions of this statute is prohibited. This milk was produced in Monroe county and sold in the county of New York, so that the plaintiff is not exculpated, but rather condemned, by the section referred to.

I therefore think that the judgment should be affirmed.

WILLIAMS, J., concurs with SPRING, J.